IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA A. BAUM, | CIVIL ACTION |
| Plaintiff, | No.: 2:16-cv-00623-JFC |
| v. | |
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, t/d/b/a METLIFE AUTO & HOME | |
| Defendant. | **JURY TRIAL DEMANDED** |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR THE JOINDER OF PARTIES

Pursuant to Rule 19(a)(1) and/or Rule 20(a) of the Federal Rules of Civil Procedure, Defendant, Metropolitan Property and Casualty Insurance Company, t/d/b/a MetLife Auto & Home, by its undersigned counsel, hereby files this Brief in Support of Defendant's Motion for the Joinder of Parties and in support thereof avers the following:

### I.     Procedural History/Background

This case arises from Plaintiff, Barbara Baum's (Ms. Baum) claim for underinsured motorist (UIM) benefits under a Policy of motor vehicle insurance that she maintained with Metropolitan Property and Casualty Insurance Company t/b/d/a MetLife Auto & Home (MetLife) as the result of a motor vehicle/pedestrian accident that occurred on January 31, 2014. (A certified portion of the terms of UIM coverage (Endorsement AE41PA 0513) of the MetLife Policy is attached hereto as **Exhibit "A"**.)

Ms. Baum commenced this action by filing a Complaint against MetLife, in the Court of Common Pleas of Allegheny County, Pennsylvania at Docket Number GD-16-006950 asserting two causes of action: Count I- Breach of Contract and Count II- Bad Faith. On May 16, 2016, MetLife filed a Notice of Removal with this Court. (ECF No. 1). On June 2, 2016, Ms. Baum filed an Amended Complaint, once against asserting two causes of action: Count I- Breach of

Contract and Count II- Bad Faith. (ECF No. 9). On October 3, 2016, MetLife filed its Answer and Affirmative Defenses to the Amended Complaint. (ECF No. 20), and as set forth in the Eighteenth Defense, MetLife asserted that Ms. Baum's claim are barred to the extent discovery reveals her alleged injuries/damages were caused by, *inter alia,* supervening, intervening and/or independent causes over which the alleged tortfeasor did not have control and/or responsibility and not in any manner whatsoever by the actions and/or inactions of the alleged tortfeasor.

For the reason set forth in the Motion for the Joinder of Parties and below, MetLife respectfully requests this Honorable Court Order Ms. Baum to join: Simon Property Group, Inc.; South Hills Village Associates, L.P.; and the Target Corporation (collectively, the Required Parties) as necessary parties to determine the rights and obligations of Ms. Baum and MetLife pursuant to the terms of the Policy.

In this regard, MetLife is only obligated to provide Ms. Baum UIM benefits when she is "legally entitled" to recover from the owner/operator of an underinsured motor vehicle[1]. To do so, Ms. Baum needs to establish that the negligent conduct of the underinsured motor vehicle operator was the cause for the accident at issue. Based on information developed through this litigation, MetLife can establish that the at-issue accident was caused and/or contributed to by the negligent removal and/or plowing of snow and the related failure to properly maintain the parking lot where this accident occurred. It is believed that the Required Parties were responsible for creating a dangerous condition and/or owed a duty to individuals, such as Ms. Baum, to maintain the parking lot in a safe and serviceable condition. Therefore, the Required Parties' negligent conduct caused and/or contributed to the at-issue accident, causing a need to determine liability on their part, and a jury must consider the same in order to determine the rights and obligations of the parties under the terms of the Policy.

---

[1] Any obligation on behalf of MetLife is subject to the terms and conditions of the policy.

## II. Legal Argument

### A. As a matter of law, Ms. Baum has the burden in establishing the damages that the alleged tortfeasor caused, and therefore, without the Required Parties, a jury cannot determine what amount, if any, of damages is related to the negligent conduct of the alleged tortfeasor.

When a Federal District Court exercises diversity jurisdiction, as in this matter, it must apply the substantive law as decided by the highest court of the state which provides the law governing the action. *State Farm Mut. Auto. Ins. Co. v. Hughes*, 438 F. Supp. 2d 526, 531 (E.D. Pa. 2006) citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938). As this dispute arises out of a claim under an insurance policy written in Pennsylvania for an insured who resides in Pennsylvania and relates to a motor vehicle accident that occurred in Pennsylvania, this Court should apply Pennsylvania substantive law. *Id.*

"The purpose of underinsurance motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to **compensate for the injuries caused by his negligence**." *Allstate Ins. Co. v. Leiter*, 306 F. Supp. 2d 488, 493 (M.D. Pa. 2004); *citing Kelly v. Nationwide Ins. Co.*, 606 A.2d 470, 474 (Pa. Super. 1992)(*quoting Wolgemuth v. Harleysville Mut. Ins. Co.*, 535 A.2d 1145, 1149 (Pa. Super. 1988)(emphasis added).

The burden is on the insured to establish coverage under an insurance policy. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001). Pursuant to the MetLife policy that serves as a basis for Ms. Baum's UIM claim, the parties agreed to the following terms:

> **We** will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** for **BI**:
> **A.** sustained by an **insured**; and
> **B.** caused by an accident arising out of owning, maintaining, or use of an **underinsured vehicle**.

(See **Exhibit "A"** UIM Endorsement AE41PA 0513, Pg. 1.)(bolding in the original).

Further, the MetLife Policy contains the following terms:

> ... ...
> **We** may require the **insured** to take appropriate action to preserve the **insured's** right to recover damages from any other person responsible for the accident or **BI**. In any lawsuit filed against **us, we** may require the **insured** to join the responsible person as a defendant.
> ... ...

(See **Exhibit "A"** UIM Endorsement AE41PA 0513, Pg. 3.)(bolding in the original).

Therefore, under the Policy at issue Ms. Baum is only entitled to recover UIM benefits to the extent she is "legally entitled" to recover for the use of a motor vehicle by an underinsured operator. Also, Ms. Baum is required to join other responsible parties in any lawsuit filed against MetLife to recover UIM benefits.

Under the circumstances at issue, Ms. Baum's right of recovery in the "legally entitled" context is controlled by negligence concepts and the Policy interpretation is subject to Pennsylvania law. As a result the issue of liability apportionment between other responsible parties is subject to 42 Pa.C.S. § 7102(a.1) (The Fair Share Act). According to the Fair Share Act, a defendant is only liable for the proportion of the total dollar amount awarded as damages in the ratio of the amount of that defendant's liability to the amount of liability attributed to all defendants **and other persons to whom liability is apportioned**. See 42 Pa.C.S. § 7102 (a.1)(1)(emphasis added). Prior to the adoption of the Fair Share Act, 42 Pa.C.S. § 7102 allowed a plaintiff to recover, jointly and severally, from any liable defendant. (A true and correct pre-Fair Share Act version of 42 Pa.C.S. § 7102 is attached hereto as **Exhibit "B"**.) By adopting the Fair Share Act the legislature abolished joint and several liability in all but a few circumstances, and according to the legislative history, it specifically decided not to allow a plaintiff to collect more than the liable parties percentage share from that party. (See 42 Pa.C.S. § 7102 legislative history attached hereto as **Exhibit "C"**.)

Therefore, pursuant to Pennsylvania law, Ms. Baum is only legally entitled to recover from the alleged underinsured driver the proportion of liability that is attributed to that individual. Thus, a jury must apportion liability among the potentially liable parties, and in order for Ms. Baum to prove the amount she is legally entitled to recover from the motor vehicle operator, the jury must apportion liability to all of the potential tortfeasors.

This would be consistent with Pennsylvania substantive law and furthers the public policy concerns underlying the cost containment purpose of the Pennsylvania Motorvehicle Financial Responsibility Law. The Supreme Court of Pennsylvania has consistently held that "the overriding public policy concerns" underlying the Motor Vehicle Financial Responsibility law was "namely, cost containment" of the "spiraling consumer costs of automobile insurance." *Williams v. GEICO Gov't Employees Ins. Co.*, 32 A.3d 1195, 1204 (Pa. 2011). Allowing the jury to apportion liability to all potential tortfeasors is consistent with cost containment objective of the Pennsylvania Motor Vehicle Financial Responsibility law[2] and Pennsylvania common law. *Pennsylvania Nat. Mut. Cas. Co. v. Black*, 916 A.2d 569, 580 (Pa. 2007) and *AAA Mid-Atl. Ins. Co. v. Ryan*, 84 A.3d 626, 633 (Pa. 2014)(UIM benefits are to protect innocent victims from underinsured motorist; however, the UIM insurer is not responsible for liability attributed to non-motorists.)

To determine otherwise would cause an automobile insurance carrier to be responsible for all for all of the insured's damages from a motor vehicle accident even if other individuals and/or entities were liable. Therefore, the carrier would be responsible for damages that were not caused by the operator of the motor vehicle. To protect against this potential the other tortfeasors need to be part of the UIM lawsuit so that liability can be apportioned as dictated by the Policy in

---

[2] "Although it is beyond cavil that one purpose of the underinsured motorist provisions of the MVFRL is to provide coverage to those injured by a tortfeasor who lacks adequate coverage, we also have held that this is not a public policy "overriding every other consideration in contract construction." In contrast, we have emphasized the cost containment policy underlying the enactment of the MVFRL..." *Id.* (internal citations omitted)

{R0679047.1}  5

conjunction with the principals of the Fair Share Act. If not when significant UIM coverage is present there would be little, if any, incentive for the insured to pursue other tortfeasors to the detriment of the carrier[3]. The carrier should not be obligated to pay UIM benefits caused by other tortfeasors because the insured did not want to expend the time, effort and resources to perfect the necessary litigation.

In the instant lawsuit, Ms. Baum was deposed on December 22, 2016, regarding, *inter alia,* the facts and circumstances surrounding the at-issue accident. (A true and correct copy of the below cited deposition transcript is attached hereto as **Exhibit "D".**) When doing she testified that this accident occurred on the far left side of the pedestrian crossing area in front of the Target store at the South Hills Village Mall. During the deposition MetLife learned for the first time that she would normally use a handicap walkway in the center of that area to access the handicapped parking spaces. Unfortunately, for Ms. Baum on the day of the accident, she could not use the walkway as it was blocked by the build-up of snow and ice. (A true and correct images of the accident location are attached hereto as **Exhibit "E"** and a screenshot of the video footage of the accident is attached hereto as **Exhibit "F".**) The screenshot serves to confirm that the roadway area of the parking lot was dry and free of snow accumulation while the entrance to the handicap walkway was snow covered.

In in that regard, she testified as follows:

> Q. Tell me what happened after you left the Target.
>
> A. Well, it was well-lit. And there is like a striped area where you can cross the street. Not that – as I was leaving, if you would try to navigate straight ahead, there is a walkway to go to the vans and the wheelchair spaces.
>
> But there was snow in the walkway that had accumulated. So I went across the road there and was way more than halfway across, and a car came around the side and struck me.

---

[3] In the instant lawsuit the insured has $1,000,000.00 in UIM coverage with MetLife under circumstances where her pre-suit demand was between $325,000.00 and $300,000.00.

(See **Exhibit "D"**, Ms. Baum's Deposition Transcript Pgs. 155-156: L.25-9).

Later, she provided the following testimony:

> A. And, normally, because I had parked --- I had shopped there previously, I would come out, and I would go this way. You are protected in there. But it's well-lit. Just saying.
>
> Q. So if, in fact, the parking lot was maintained in such a way that the snow was removed, you would have used a different way on the day of the accident?
>
> A. I would have gone straight.
>
> Q. And if you would have gone straight, that would have taken you in a way that would have been outside the path of the motor vehicle?
>
> A. Maybe. The way she hit me, I am not sure. I just know, the next day, they came up with the photos, and I'm like, oh, yeah, I remember – you know, like I remembered that normally I come this way. So where she hit me, you know.

(See **Exhibit "D"**, Ms. Baum's Deposition Transcript Pg. 160: L.9-24).

Ms. Baum then testified that she would normally take the path between landscaping islands in the parking lot that would take her directly to the handicapped parking area, but due to the snow, she was caused to go around the landscaped island to get to her vehicle. (See **Exhibit "D"**, Ms. Baum's Deposition Transcript Pg. 161: L.4-23).

Based on climatological data and video of the accident, it is believed that the snow accumulation that caused her to change her typical route to her vehicle, was not only there due to shoveling/plowing, as opposed to natural accumulation, but also it had been there for a significant period of time prior to the accident. (A true and correct copy of the January 2014 Local Climatological Data from the National Climatic Data Center is attached hereto as **Exhibit "G"**.)

After Ms. Baum testified that she was unable to take the pathway that "protected" her, Plaintiff's counsel produced a surveillance video of the actual accident confirming the route Ms.

Baum was caused to take. Said video was provided to a reconstructionist who recently opined that had Ms. Baum been able to take her normal path of travel, the accident at issue would not have occurred, nor would any subsequent accident have occurred. Therefore, Ms. Baum's damages were caused and/or contributed to by the conduct of the individuals and/or entities that had a duty to make sure the pathway intended for pedestrian travel was not obstructed by the snow and/or ice condition that was present at the time of the at-issue accident. MetLife does not owe UIM benefits for those damages.

In order to determine who was responsible for maintaining the area where the at-issue accident occurred, on or about February 28, 2017, MetLife served subpoenas on: Target Corporation; Simon Property Group, Inc.; and South Hills Village Associates, L.P. To date, Target Corporation has not complied with the subpoena requests, and the subpoena compliance is subject to a pending Motion for Contempt.

At all times relevant hereto, it is believed Simon Property Group, Inc., South Hills Village Associates, L.P., and Target Corporation, as well as their agents, servants and/or employees: leased, owned, operated, possessed, controlled, managed and/or maintained the location where the accident that gives rise to this lawsuit occurred.

- Simon Property Group, Inc. is believed to be a Delaware corporation, with corporate headquarters located at 225 West Washington Street, Indianapolis, Indiana 46204, licensed to do business in Pennsylvania and doing business at and/or as the South Hills Village Mall, 301 South Hills Village, Pittsburgh, Allegheny County, Pennsylvania.

- South Hills Village Associates, L.P., is believed to be a Delaware limited partnership, with a registered office at c/o CT Corporation System, 116 Pine Street, Harrisburg, Dauphin County, Pennsylvania, licensed to do business in Pennsylvania and doing business in Bethel Park, Allegheny County, Pennsylvania.

- Target Corporation is believed to be a Minnesota corporation, with corporate headquarters located at 1000 Nicollet Mall, Minneapolis, Minnesota, and with a general merchandise consumer retail store located at South Hills Village, 201 South Hills Village, Pittsburgh, Allegheny County, Pennsylvania.

At all times relevant hereto, it is believed Simon Property Group, Inc., South Hills Village Associates, L.P., and Target Corporation, as well as their agents, servants and/or employees: leased, owned, operated, possessed, controlled, managed and/or maintained the location where the accident that gives rise to this lawsuit occurred.

Pursuant to Fed. R. Civ. P. 19(a), this Court has authority to join and/or compel Plaintiff to join the Required Parties, because the Required Parties are subject to the service of process and will not deprive this Court of subject-matter jurisdiction. Further, complete relief cannot be granted without the required parties' joinder. Pursuant to Fed. R. Civ. P. 19(c)(2), the reasons the Required Parties were not joined by MetLife are that it has no direct cause of action against them and it had no knowledge of their negligence until Ms. Baum deposition. In the alternative to joinder under Fed. R. Civ. P. 19, MetLife requests this Honorable Court to join the Required Parties as Defendants under Fed. R. Civ. P. 20, because Ms. Baum and MetLife's right to relief necessitates the Required Parties joinder and there joinder will deal with common questions of law and fact.

As set forth above, pursuant to the terms of the Policy relating to UIM benefits, MetLife may require Ms. Baum to join the Required Parties. Further, pursuant to the terms of the Policy, MetLife is only responsible for compensating Ms. Baum for the conduct of an underinsured driver, and not the negligent conduct of other parties. Therefore, in order for a jury to determine the rights and obligations of the parties, it must consider all potentially negligent individuals/entities including the Required Parties.

### III. Conclusion

Allowing the jury to apportion liability to all potentially negligent individuals/entities furthers two fundamental ideals of Pennsylvania substantive law: an individual is liable only for their ratio of liability; and the overriding public policy concern of cost containment of motor

vehicle insurance. Further, MetLife is only contractually obligated to pay UIM benefits for the conduct of an underinsured operator of a motor vehicle, and not for the negligent conduct of other individuals/entities. Allowing the jury to consider the conduct of the Required Parties further serves to ensure that Ms. Baum would pursue all liable parties in the tort action, instead of pursuing her insurer that is left with no recourse and may be caused to pay for injuries and/or damages that the operator of the motor vehicle was not responsible for causing.

                                                 Respectfully submitted,

                                                 ROBB LEONARD MULVIHILL LLP

Date: Friday, May 12, 2017          /s/ *R. Sean O'Connell*
                                                 R. Sean O'Connell, Esquire
                                                 PA I.D. #79428
                                                 Craig W. Beil, Esquire
                                                 PA I.D. #311927
                                                 500 Grant Street
                                                 BNY Mellon Center, Suite 2300
                                                 Pittsburgh, PA 15219
                                                 Phone: (412) 281-5431
                                                 Email: soconnell@rlmlawfirm.com