# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BARBARA A. BAUM,** | : CIVIL ACTION NO. 2:16-CV-623 |
| Plaintiff | : (Chief Judge Conner) |
| v. | : |
| **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, t/d/b/a METLIFE AUTO & HOME,** | : |
| Defendant | : |

## MEMORANDUM

Plaintiff Barbara A. Baum ("Baum") commenced the above-captioned action against her insurance company asserting claims of breach of contract and bad faith pursuant to 42 PA. CONS. STAT. § 8371. (Doc. 9). Defendant Metropolitan Property and Casualty Insurance Company ("MetLife") seeks to submit three nonparties to the jury as joint tortfeasors on the verdict form for apportionment of fault. (Docs. 38, 53, 59).

## I.  Factual Background

Baum is a tetraplegic Pennsylvania resident who utilized a wheelchair for mobility prior to the events underlying this litigation. (Doc. 9 ¶¶ 1-2; Doc. 20 ¶ 2). On January 31, 2014, a motor vehicle operated by Leanne Diamond ("Diamond") struck Baum as she exited a Target department store and headed towards her vehicle in the parking lot. (Doc. 9 ¶¶ 9-10). The impact of the collision threw Baum from her wheelchair onto the pavement. (Id. ¶ 11). Baum suffered significant injuries, to wit: displaced fractures in her feet, abrasions and lacerations over the

left anterior pretibial region, erythema and bruising of her left foot and toes, edema of both feet, and increased episodes of autonomic dysreflexia. (Id. ¶ 12).

Following the accident, Baum filed a claim with Diamond's insurance company, State Farm. (Id. ¶ 14; Doc. 20 ¶ 14). State Farm offered Baum the policy limits of Diamond's liability insurance in the amount of $50,000. (Doc. 9 ¶ 15; Doc. 20 ¶ 15). Baum sought and obtained consent to settle the claim with State Farm from her insurer MetLife in September of 2014. (Doc. 9 ¶¶ 16-17; Doc. 20 ¶¶ 16-17; see also Doc. 48-2 at 1-2; Doc. 48-3). The release included in the settlement agreement provides, *inter alia*, the following:

> . . . [Baum] hereby releases and forever discharges
> Leanne Diamond, Justin Diamond, their heirs, executors,
> administrators, agents and assigns, and all other persons,
> firms or corporations liable or, who might be claimed to
> be liable, none of whom admit any liability to [Baum] but
> all expressly deny any liability, from any and all claims . . .
> which have resulted or may in the future develop from
> [the] accident which occurred on or about January 31,
> 2014, at or near Target Parking Lot . . . .

(Doc. 48-3). On November 21, 2014, Baum submitted an underinsured motorist claim to MetLife for $325,000. (Doc. 9 ¶¶ 16, 18; Doc. 20 ¶¶ 16, 18). MetLife offered Baum $20,000 for full settlement of the claim on December 11, 2014. (Doc. 9 ¶ 20; Doc. 20 ¶ 20).

Baum declined MetLife's initial offer and engaged a physiatrist to produce an expert report outlining her injuries. (Doc. 9 ¶¶ 21-22). Baum transmitted the report to MetLife on February 13, 2015. (Id. ¶ 23). Throughout the ensuing months, the parties exchanged communications and documents relevant to the claim. (Id. ¶¶ 24-29). MetLife extended a new offer to Baum on July 10, 2015 of $25,000 for full

settlement of her underinsured motorist claim. (Id. ¶ 30). Baum disagreed with MetLife's assessment of her injuries and rejected the offer. (Id. ¶ 31). The parties ceased negotiations on December 11, 2015. (Id. ¶ 32; Doc. 20 ¶ 32).

## II. **Procedural History**[1]

Baum commenced the instant action on April 25, 2016 in the Allegheny County Court of Common Pleas alleging breach of contract and bad faith in violation of 42 PA. CONS. STAT. § 8371. (Doc. 1-2). MetLife removed the case to federal court on May 16, 2016. (Doc. 1). Baum filed an amended complaint on June 2, 2016 which MetLife answered on October 4, 2016. (Docs. 9, 20).

Approximately three weeks before the close of fact discovery, MetLife moved to join three nonparties pursuant to Federal Rules of Civil Procedure 19 and 20: Simon Property Group, Inc. ("Simon Property"), South Hills Village Associates, L.P. ("South Hills"), and the Target Corporation ("Target"). (Doc. 38 at 1, ¶ 5; see Doc. 33). MetLife alternatively sought to include these three entities on the verdict slip for the sole purpose of determining liability. (Doc. 38 ¶ 5). MetLife averred that a paved pathway leading from the store entrance to the handicapped parking spaces was blocked by snow accumulation on the day of the accident and that each of the nonparties may be partially liable for failing to clear the pathway. (Id. ¶¶ 7-8, 10). During proceedings on June 12, 2017, our colleague, Chief Judge Joy Flowers Conti, denied MetLife's motion (Doc. 38) for joinder. (Doc. 54 at 28-30, 34). Judge Conti requested supplemental briefing on whether Simon Property, South Hills,

---

[1] Jurisdiction over the instant action is based on diversity of citizenship, see 28 U.S.C. § 1332, and neither party disputes the applicability of Pennsylvania law to Baum's claims, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938).

3

and Target are joint tortfeasors and should be submitted to a jury on the verdict form for the limited purpose of assigning liability for the accident. (Id. at 30-40). Following supplemental briefing (Docs. 53, 56, 59, 62), MetLife's request is ripe for disposition.

### III. Discussion

Pennsylvania's comparative negligence statute allows parties in a tort action to submit a nonparty "who has entered into a release with the plaintiff with respect to the action" to the trier of fact for the limited purpose of apportioning liability. 42 PA. CONS. STAT. § 7102(a.2). Any attribution of responsibility imputed to the nonparty is inadmissible "in any other action or proceeding for any purpose." Id. MetLife seeks to invoke this statute to include Simon Property, South Hills, and Target together with Diamond on the verdict form for the purpose of apportioning liability among all potential negligent actors. (Doc. 53 at 8). For the reasons that follow, MetLife's request will be denied.[2]

Insurers may contract for a right of subrogation. Jones v. Nationwide Prop. & Cas. Ins. Co., 32 A.3d 1261, 1271 (Pa. 2011). After paying a claim to an insured, subrogation allows an insurer to recover from a primarily-liable third party

---

[2] As a preliminary matter, we note that this issue presents in a somewhat unique procedural posture in that Simon Property, South Hills, and Target have not yet been established as joint tortfeasors. MetLife may establish that these nonparties are joint tortfeasors through Baum's concession in a joint tortfeasor release or by adjudication. Yarus v. Walgreen Co., No. 14-1656, 2015 WL 5025479, at *2 (E.D. Pa. Aug. 24, 2015) (citing Mazer v. Sec. Ins. Grp., 507 F.2d 1338, 1342 (3d Cir. 1975)); see also Rocco v. Johns-Manville Corp., 754 F.2d 110, 114-15 (3d Cir. 1985). Judicial determinations of joint tortfeasor status normally occur in a suit by the injured party against multiple defendants or in a suit by a defendant for contribution. Rocco, 754 F.2d at 114. MetLife has not identified a single case in which a court has unilaterally declared a nonparty to be a joint tortfeasor. (See generally Docs. 38, 39, 52, 53, 59).

4

tortfeasor any amounts paid by the insurer to its insured. Id. at 1270; see also Daley-Sand v. W. Am. Ins. Co., 564 A.2d 965, 969 (Pa. Super. Ct. 1989). An insurer may also require its insured to obtain the insurer's consent before settling a claim and executing a release which waives some or all rights, including the right to subrogation. Fisher v. USAA Cas. Ins. Co., 973 F.2d 1103, 1105 (3d Cir. 1992). There are generally two types of releases in this context: a general release, which discharges all liability of parties who could have contributed to the injury, Black v. Jamison, 913 A.2d 313, 324-25 (Pa. Commw. Ct. 2006), and a joint tortfeasor release, which discharges only parties specifically named in the document from any further liability, id. at 325.

When presented with a demand for consent, an insurer must either (a) deny coverage under the policy, (b) admit coverage and provide consent to settle, or (c) "admit coverage, deny consent, pay the insured's claim, and pursue its subrogation rights by asserting the insured's claims against [any] tortfeasor[s]." Fisher, 973 F.2d at 1107. An insurer may not unduly delay its decision regarding coverage once presented with a demand for consent. Id.; see also Daley-Sand, 564 A.2d at 967.

Baum's insurance policy with MetLife contains a consent-to-settle provision. The policy states in pertinent part:

> **SETTLEMENT**
>
> . . .
>
> **We** are not bound by any judgment, settlement or agreement against any person or organization obtained without **our** consent.
>
> . . .

5

> **ADDITIONAL DUTIES**
> All **insureds** must cooperate with **us** in investigating an accident.
>
> **We** may require the insured to take appropriate action to preserve the **insured's** right to recover damages from any other person responsible for the accident or **BI**. In any lawsuit against **us**, **we** may require the **insured** to join the responsible person as a defendant.

(Doc. 9-1 at 21-22). Baum sought and obtained MetLife's consent to settle the claim with State Farm, Diamond's insurance company. (Doc. 9 ¶¶ 16-17; Doc. 20 ¶¶ 16-17). Faced with a demand for consent, MetLife had the opportunity to admit coverage, deny consent, pay Baum's claim, and exercise its subrogation rights by pursuing any and all potential tortfeasors including Diamond. See Fisher, 973 F.2d at 1107. MetLife elected not to invoke its contractual right to require Baum to take "appropriate action"—including instructing Baum to enter into a more limited joint tortfeasor release—to preserve its right to recover from any and all responsible parties. (See Doc. 9-1 at 22). Instead, MetLife extinguished its subrogation rights by providing Baum consent to settle the claim through a general release. (Doc. 48-2 at 2).

MetLife now seeks to circumvent the consequences of the general release by including Simon Property, South Hills, and Target on the verdict form. The practical effect of MetLife's request is to insert an exhaustion requirement into Baum's insurance policy where none exists. And nothing in the policy required Baum to conduct an investigation into, or ascertain in any way, all potential joint tortfeasors. Even assuming Baum's policy contained such a clause—which it clearly does not—exhaustion clauses in insurance contracts may not be interpreted

6

to "require an insured to seek recovery from [anyone] other than the owners and operators of vehicles involved in the accident."  Bremer v. Prudential Prop. & Cas. Ins. Co., No. 3:03-1810, 2004 WL 1920708, at *3 (M.D. Pa. Aug. 18, 2004) (quoting Boyle v. Erie Ins. Co., 656 A.2d 941, 943 (Pa. Super. Ct. 1995)); see also Gallagher v. Ohio Cas. Ins. Co., No. 13-0168, 2014 WL 1386990, at *5 & n.14 (E.D. Pa. Apr. 9, 2014), aff'd, 598 F. App'x 59 (3d Cir. 2015).

Baum's insurance policy mandates only that Baum "cooperate with [MetLife] in the investigation, settlement or defense of any claim or suit" and "assist in securing and making evidence available to [MetLife]."  (Doc. 9-1 at 17).  MetLife's assertion that Baum withheld information pertinent to determining all possible liable parties is unfounded.  (See Doc. 52 at 4-5; Doc. 59 at 1).  Baum opened a claim with MetLife three days after the accident, on February 3, 2014.  (Doc. 48-1; see also Doc. 9 ¶ 10).  She also notified MetLife that Target had video footage of the accident.  (Doc. 48-1).  Prior to receiving Baum's consent-to-settle demand in September of 2014, MetLife had six months to investigate the accident, review the video footage, and seek additional evidence and testimony from Baum.  (See Doc. 9 ¶¶ 16-17; Doc. 20 ¶¶ 16-17; Doc. 48-2 at 1-2).  MetLife may not invoke the existence of possible joint tortfeasors at this late juncture to restore its forfeited subrogation rights to Baum's detriment.

**IV.	Conclusion**

The court will deny MetLife's motion (Doc. 38) to include Simon Property, South Hills, and Target on the verdict slip as potential joint tortfeasors. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:	January 11, 2018